UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

J.H.                                                                      PLAINTIFF

VS.                                        CIVIL ACTION NO. 3:16-cv-802-CWR-LRA

MANAGEMENT & TRAINING
CORPORATION and JOHN AND
JANE DOES 1-100                                                          DEFENDANTS

### MEMORANDUM OF AUTHORITIES IN SUPPORT OF DEFENDANT'S MOTION FOR SUMMARY JUDGMENT BASED ON PLAINTIFF'S FAILURE TO EXHAUST ADMINISTRATIVE REMEDIES

COMES NOW Defendant Management & Training Corporation, by counsel and pursuant to Rule 56 of the Federal Rules of Civil Procedure, and files this Memorandum of Authorities in support of its Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies, as follows:

### INTRODUCTION

Plaintiff J.H. filed this civil action on October 13, 2016, pursuant to 42 U.S.C. § 1983, claiming the violation of his constitutional rights during his incarceration as a post-conviction inmate at East Mississippi Correctional Facility ("EMCF").  He is proceeding in this matter *in forma pauperis*.  Plaintiff originally sued Warden Frank Shaw, Officer Jacquadazia Ford, Deputy Warden Norris Hogans, Deputy Warden Ray Rice, Sgt. Lemcarcus Ruffin, and their employer, Management & Training Corporation ("MTC").[1]  MTC has operated EMCF under contract with the Mississippi Department of Corrections ("MDOC") since July 19, 2012.  After retaining counsel, Plaintiff

---

[1] All of the originally-named Defendants, except for Officer Ford, previously filed a Motion for Summary Judgment Based on Plaintiff's Failure to Exhaust Administrative Remedies and Memorandum of Authorities in support of the same.  *See* Docs. [14, 15].  After Plaintiff retained counsel, the Court denied Defendants' motion without prejudice subject to being re-filed after the entry of a case management order.

successfully sought leave to amend his Complaint, and an Amended Complaint was filed on August 23, 2017.  *See* Doc. [34].

Plaintiff claims that on or about July 30, 2016, he told Warden Shaw and several attorneys from the Southern Poverty Law Center making rounds on his unit that inmates had been raped on his unit and that he did not feel safe.  *See* Doc. [34], ¶ 7.  He further claims that on August 1, 2016, between 8 p.m. and 10 p.m., he was raped by inmate Michael Wilson in Wilson's cell.  *Id.*, at ¶ 8. He claims that between 5 a.m. and 7 a.m. the next morning, he called the prison rape hotline to report the incident.  *Id.*, at ¶ 9.  Plaintiff further claims that between 7 a.m. and 9 a.m., after shift change, he told Officer Ford he needed to go to medical for a breathing treatment.  *Id.*, at ¶ 10.  Plaintiff claims Officer Ford shrugged him off, so he then told her he had been raped.  *Id.*  Plaintiff claims she did not take him seriously and, to his knowledge, never called medical.  *Id.*, at ¶ 11.  Between 9 a.m. and 10 a.m. the same morning, Plaintiff claims he was called to the library to send out some legal mail, and he saw Health Services Administrator Ollie Little on the way and told him what had happened.  *Id.*, at ¶ 12.  Plaintiff claims that after he went to the library, he went straight to medical and was evaluated by Nurse Edwards.[2]  *Id.*, at ¶ 14-15.  He claims he was then sent to the ER at Rush Hospital to have a rape kit done.  *Id.*, at ¶ 17.  He claims hospital staff contacted the sheriff's department, but that sheriff's department personnel were unable to take his clothes as evidence at that time because Investigator Ruffin at EMCF had not yet tagged them.[3]  *Id.*, at ¶¶ 18-20.

---

[2] Plaintiff's medical records indicate he was seen by Nurse Edwards in the medical clinic at 9:15 a.m. on August 2, 2016, after reporting that he had been sexually assaulted by another inmate the day before.

[3] Plaintiff's rape allegations were ultimately found to be unsubstantiated.  *See* PREA Investigation Memo, attached to Dempsey Affidavit, Exh. "A."

Plaintiff has asserted causes of action against MTC for the alleged failure of its employees to intervene and prevent the alleged rape from occurring, either by failing to conduct cell checks and head counts on his unit or by ignoring or condoning the sexual assault against Plaintiff. *Id.*, at p. 4-5, ¶ 22, ¶¶ 13-14.[4]   Plaintiff further asserts that MTC established unwritten policies, customs, and practices that directly and proximately caused the deprivation of his constitutional rights, including:

    a.    inadequate and improper training, supervision and discipline of EMCF corrections officers;

    b.    condoning or allowing gangs to sexually assault other inmates;

    c.    inadequate and improper procedures and practices in screening, hiring, training, supervising and disciplining officers who practice, condone or use excessive force upon EMCF inmates,[5] or allow inmates to sexually assault other inmates, including the Plaintiff, in violation of their constitutional rights;

    d.    inadequate and improper procedures, policies and practices for investigating improper activities by EMCF correctional officers and gangs either through offender complaints of misconduct or through internally-initiated complaints or investigations;

    e.    inadequate or improper procedures, policies and practices for identifying and taking appropriate action against EMCF correctional officers who are in need of re-training, corrective measure, reassignment, or other non-disciplinary actions, through a positive or early warning system designed to prevent the violation of inmates' rights;

    f.    condoning and allowing EMCF correctional officers to allow inmates to commit sexual assaults on other inmates;

    g.    failing to prevent and/or investigate allegations of improper

---

[4] The paragraphs contained in the Amended Complaint are numbered 1 through 22 and then start over at 13 on Page 4.

[5] Plaintiff has not otherwise alleged, and Defendant is unaware of, any security personnel at EMCF using force against Plaintiff.

relationships between EMCF correctional officers and EMCF inmates which directly led to the June 17, 2010 assault in Unit 6;[6]

h.     failing to conduct routine cell checks;

i.     allowing inmates to leave their cells freely due to faulty locks on the cell doors.

*See* Doc. [34], at p. 5, ¶¶ 15-16.  Plaintiff further asserts claims against MTC for negligence in the hiring, supervision, and retention of its employees, and for respondeat superior for the allegedly deficient acts or omissions of its employees.  *Id*., at ¶¶ 17-19.

It is undisputed that Plaintiff failed to exhaust his available administrative remedies as to any of his claims against MTC prior to filing suit.

On August 18, 2016, Plaintiff submitted a grievance through the MDOC Administrative Remedy Program ("ARP") complaining that when he reported the alleged rape incident to Officer Ford at 8:30 a.m. on August 2, 2016, she did not take him seriously and did not call medical.  *See* Bolden Affidavit, Exh. "A," referencing EMCF-16-1265.  Plaintiff's requested relief was for Officer Ford to "take things more serious" when it comes to offender safety, and for her to receive "whatever punishment that seems proper for her actions."  *Id*.  The complete text of Plaintiff's grievance is as follows:

> Date of Incident: 8-2-16
> Time of Incident: 8:30 a.m.
> Place of Incident: Unit 3-C zone door
> Alleged Complaint: Conflict with staff
>
> On 8-1-16, I was raped by another inmate. I went to the door after shift

---

[6] Plaintiff has not otherwise alleged that he was assaulted due to an improper relationship between a correctional officer and another inmate, nor has he alleged that he was assaulted on June 17, 2010 in Unit 6.  No such assault was referenced in Plaintiff's original Complaint. Defendant assumes this allegation was inadvertently included in the Amended Complaint.

> change and told Officer Ford (who works Unit 3) that I needed to go to the
> clinic for a breathing treatment. I told her to please call them. Then I told her
> that I had been raped. She laughed at me and said did he rape you in your
> booty, like it was a joke. I told her I was serious. She never called medical.
> When they let me go to the library, I went to medical and reported the rape
> to Nurse Edwards.
>
> Relief Requested: Officer Ford should take things more serious when it
> comes to offenders safety and well being. Whatever punishment that seems
> proper for her actions.

*Id*. (EMCF-16-1265). Plaintiff's grievance did not identify or in any way reference MTC or any

other EMCF official besides Officer Ford. *Id*. Deputy Warden Rice completed a second step

response on August 18, 2016, noting that he would be investigating Plaintiff's allegations under

PREA policies and procedures, which concluded the ARP process for this grievance. *Id*.

According to Tina Bolden, the ARP coordinator at EMCF, Plaintiff has not submitted any

other grievances pertaining to the alleged August 1, 2016, sexual assault. *See* Exh. "A." Plaintiff

also has not submitted any grievances alleging that MTC or its employees failed to protect him from

harm by other inmates; that MTC or its employees failed to conduct routine cell checks or head

counts on his housing unit; that MTC or its employees subjected him to excessive force; that MTC

has inadequate or improper hiring, training, supervision, or discipline of its employees; that the

investigation of his alleged sexual assault was in any way deficient; that his medical treatment

following the alleged sexual assault was in any way deficient; or that MTC or its employees allowed

inmates to leave their cells freely due to faulty locks on cell doors. *Id*.

**LAW AND ARGUMENT**

**A.    Summary Judgment Standard**

Rule 56 of the Federal Rules of Civil Procedure authorizes summary judgment where the

"pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits,

if any, show that there is no genuine dispute as to any material fact that the moving party is entitled to judgment as a matter of law." *Chelates Corp. v. Citrate*, 477 U.S. 317, 322 (1986). "The mere existence of a disputed factual issue, therefore, does not foreclose summary judgment. A dispute must be genuine and the facts must be material." *Professional Managers, Inc. v. Faber, Bryan, Hardy and Zatzkis*, 799 F.2d 218, 222 (5th Cir. 1986). The moving party has a duty to demonstrate the lack of a genuine issue of material fact and the appropriateness of judgment as a matter of law to prevail on the motion. *Union Planters Nat. Leasing v. Woods*, 687 F.2d 117 (5th Cir. 1982).

Once a properly supported motion for summary judgment is presented, the non-moving party must rebut with "significant probative evidence." *Ferguson v. National Broadcasting Co., Inc.*, 584 F.2d 111, 114 (5th Cir. 1977). In other words, "The non-moving litigant is required to bring forth significant probative evidence demonstrating the existence of a triable issue of fact." *In re: Municipal Bond Reporting Anti-Trust Lit.*, 672 F.2d 436, 440 (5th Cir. 1982).

To defend against a proper summary judgment motion, one may not rely on mere denial of material facts, nor on unsworn allegations in the pleadings or arguments and assertions in briefs or legal memoranda. A non-moving party's response, by affidavit or otherwise admissible evidence, must set forth specific facts showing that as to the matter at hand there is a genuine issue of material fact for trial. *Woods*, 687 F.2d at 119.

**B.    Plaintiff's claims are barred under the PLRA due to his failure to exhaust his available administrative remedies prior to filing suit**

Pursuant to the Prison Litigation Reform Act (PLRA), prisoners are required to exhaust any available administrative remedies before filing suit: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available

<u>are exhausted</u>." 42 U.S.C. § 1997e(a) (2000).[7] *See Johnson v. Ford*, 261 Fed. Appx. 752, 755 (5th Cir. 2008) (stating that the Fifth Circuit takes "a strict approach" to the PLRA's exhaustion requirement).

Exhaustion is mandatory, "irrespective of the forms of relief sought and offered through the administrative avenues." *White v. Epps*, 2009 U.S. Dist. LEXIS 98288, 2 (S.D. Miss. Aug. 19, 2009), citing *Booth v. Churner*, 532 U.S. 731 (2001). The PLRA's exhaustion requirement "applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002).

Dismissal is mandatory where a prisoner failed to properly exhaust the available prison grievance process *before* filing his complaint. *Gonzalez v. Seal*, 702 F.3d 785, 788 (5th Cir. 2012). In *Gonzalez*, the Fifth Circuit overruled prior case law that gave district courts discretion to "excuse" an inmate's failure to exhaust before filing suit. *See Id.*, overruling *Underwood v. Wilson*, 151 F.3d 292 (5th Cir. 1998). It is not enough to merely initiate the grievance process or to put prison officials on notice of a complaint; the grievance process must be carried through to its conclusion before suit can be filed under the PLRA. *Tompkins v. Holman*, 2013 U.S. Dist. LEXIS 42338, 3 (S.D. Miss. March 26, 2013) (dismissing plaintiff's claims regarding inadequate medical care without prejudice for failing to complete the ARP process prior to filing suit). As stated by the U.S. Supreme Court:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. **The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want**

---

[7] Mississippi statutes contain a similar requirement for prisoner actions filed in state court. *See* MISS. CODE ANN. § 47-5-801, *et seq*.

> to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . .

*Woodford v. Ngo*, 548 U.S. 81, 95 (U.S. 2006).

MISS. CODE ANN. § 47-5-801 grants MDOC the authority to adopt an administrative review procedure at each of its correctional facilities. Pursuant to this statutory authority, the MDOC has set up an Administrative Remedy Program ("ARP") through which an offender may seek formal review of a complaint relating to any aspect of their incarceration. The ARP is a two-step process. Inmates are required to initially submit their grievances in writing to the Legal Claims Adjudicator within thirty days of the incident. If, after screening, a grievance is accepted into the ARP, the request is forwarded to the appropriate official, who will issue a First Step Response. If the inmate is unsatisfied with this response, he may continue to the Second Step by using ARP form ARP-2 and sending it to the Legal Claims Adjudicator. A final decision will be made by the Superintendent, Warden, or Community Corrections Director. If the offender is not satisfied with the Second Step Response, he may file suit in state or federal court. *See McKinney v. Byrd*, 2013 U.S. Dist. LEXIS 118689, *4, n.2. (S.D. Miss. July 2, 2013).

"Section 1997e(a) does not say how specific a prisoner's administrative grievances must be," but the Fifth Circuit has offered guidance on this issue. *Sears v. Shaw*, 2016 U.S. Dist. LEXIS 34724, at 13 (S.D. Miss. 2016), citing *Johnson v. Johnson*, 385 F.3d 503, 516 (5th Cir. 2004). A prisoner must give prison officials "fair notice" of his specific complaints that will later form the basis of his lawsuit, as well as the "time and opportunity to address the complaints internally." *Johnson*, 385 F.3d at 516. The amount of information that a prisoner must provide depends on the type of problem about which the inmate is complaining. *Id.*, at 517. "Beyond those practical

considerations, the prison system's own rules regarding grievances provide both inmates and the courts with more specific guidance." *Id.* "Since prisoners are generally required to follow the procedures adopted by the state prison system, the specificity requirement should be interpreted in light of the grievance rules of the particular prison system," which in this case is MDOC. *Id.* "Thus, in deciding whether the grievance gives officials an opportunity to address the problem, [the Court] should consider whether the grievance provides the type of information that the [MDOC] rules request." *Id.*

The MDOC's administrative review procedures, as set forth in the MDOC Inmate Handbook, outline the formal process for Plaintiff and other inmates who wish to seek redress from prison officials regarding "a <u>policy</u> applicable within an institution or facility, or an <u>action</u> involving an inmate or employee of an institution or facility, or an <u>incident</u> occurring within an institution or facility, or a <u>condition</u> in an institution or facility." *See* Exh. "B" (emphasis added). These ARP guidelines further advise that an ARP request "should present <u>as many facts as possible to answer all the questions who, what, when, where, and how concerning the incident</u>." *Id.* Plaintiff was "not required to present specific legal theories in his grievances, but he was required to provide facts and to alert prison officials of the problem in order to give them an opportunity to address it." *Johnson,* 385 F.3d 503 at 517; *Sears*, 2016 U.S. Dist. LEXIS 34724, at 14-15.

This Court has previously held that MDOC's policies *do* require an inmate to name or at least reference by description the parties against whom he seeks to later file suit in court, and to provide the facts related to such a claim:

> In *Jones v. Bock*, the [Supreme] Court held that exhaustion is not *per se* inadequate merely because a prison official sued in the § 1983 action was not named in the administrative grievance. The Court noted that it is the prison's grievance procedure that controls, and that procedure may require the prisoner to reference a particular official. The level of detail necessary in a grievance to comply with the grievance procedures will vary from system to system and claim to claim, but it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion. **Although the**

> **MDOC program has no specific requirement that the individual prison official be named, the inmate is required to present as many facts as possible and answer all the questions "who, what, when, where, and how concerning the incident." Effectively, this portion of the ARP requires that all officials involved be named or at least referenced by description**.

*Hayes v. Dunn*, 2016 U.S. Dist. LEXIS 29572, *9-10 (S.D. Miss. 2016) (internal citations omitted) (emphasis added). In *Hayes*, the court found that "[a]lthough Hayes did file an ARP regarding his mental health treatment, his ARP did not reflect the Complaint he brings in this Court."  *Id.*, at 10. Thus, summary judgment was granted as to the claims not raised and exhausted through the ARP process prior to the plaintiff filing suit.  *Id.  See also Sears*, 2016 U.S. Dist. LEXIS 34724, at 15-16 (holding that although plaintiff had exhausted his claims regarding disciplinary action taken against him and his assailant after he was stabbed, his administrative grievance failed to mention his failure-to-protect claims against prison officials regarding the same incident; thus plaintiff's failure-to-protect claims were dismissed for failure to comply with PLRA's pre-suit exhaustion requirements).

In the present action, it is undisputed that although Plaintiff did file a grievance complaining about Officer Ford failing to take him to the medical department immediately after he reported the alleged rape to her, his grievance failed to raise any allegations whatsoever as to any of the claims asserted against MTC in the Amended Complaint.  *See* Exh. "A," referencing EMCF-16-1265.  It is undisputed that Plaintiff failed to submit any other grievances pertaining to the alleged August 1, 2016 sexual assault.  *Id*.

Plaintiff has never submitted any grievances alleging that MTC or its employees failed to protect him from harm by other inmates; that MTC or its employees failed to conduct routine cell checks or head counts on his housing unit; that MTC or its employees subjected him to excessive force; that MTC has inadequate or improper hiring, training, supervision, or discipline of its employees; that the investigation of his alleged sexual assault was in any way deficient; that his medical treatment following the alleged sexual assault was in any way deficient; or that MTC or its

employees allowed inmates to leave their cells freely due to faulty locks on cell doors. *Id.* Plaintiff was required to raise each of these claims through the ARP process before filing suit.

It is well established that an inmate cannot pursue a claim in federal court where he failed to adequately describe it through the prison's administrative grievance procedure. *See, e.g., Sonnier v. Hogans*, 2017 U.S. Dist. LEXIS 45511, *12 (S.D. Miss. Mar. 28, 2017, Hon. L. Anderson) (dismissing prisoner's supervisory claims against warden and conditions of confinement claim against corrections officer where grievance only addressed claim regarding an officer who threatened him and claims regarding medical care); *Pearson v. Taylor*, 665 F. App'x 858, 867 (11th Cir. 2016) (dismissing deliberate indifference to medical needs claims against warden where grievance only alleged excessive force against officer); *Ward v. Hoffman*, 2016 WL 6651870 at *2 (7th Cir. Nov. 10, 2016) (dismissing claims of excessive force where grievance only complained of procedures used by disciplinary committee); *Burns v. Eaton*, 752 F.3d 1136 (8th Cir. 2014) (where grievance only claimed one officer used excessive force by spraying an inmate with pepper spray, court properly dismissed deliberate difference claim against different officer who delayed turning on the shower to prisoner could wash off); *Hubbard v. Danberg*, 408 F. App'x 553, 555-56 (3d Cir. 2010) (dismissing claims of discrimination in job placement of disabled prisoners because grievance only alleged inadequate medical care); *Curry v. Scott*, 249 F.3d 493, 505 (6th Cir. 2001) (grievance specifically complaining of a beating by one guard did not suffice to exhaust a failure-to-protect claim against another guard who was not mentioned in the grievance but who allegedly stood by and watched).

By filing suit against this Defendant without first exhausting his claims through the ARP process, Plaintiff undermined the very purpose of the prison's administrative grievance system. "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204

(2007). Additionally, the exhaustion process may reduce the number of suits filed by prisoners and also "improve the quality of suits that are filed by producing a useful administrative record." *Id.*

The Court has no discretion here to excuse Plaintiff's failure to exhaust prior to filing suit. *Gonzalez*, 702 F.3d at 788. "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones*, 549 U.S. at 211. Because Plaintiff failed to exhaust his available administrative remedies regarding the claims raised against MTC prior to filing suit, his claims against this Defendant are barred by the PLRA, 42 U.S.C. § 1997e(a), and should be dismissed.

## **CONCLUSION**

Plaintiff has failed to exhaust his available administrative remedies as to any of his claims against MTC. Accordingly, there are no genuine issues of material fact, and Plaintiff's claims against this Defendant are barred under 42 U.S.C. § 1997e(a) and should be dismissed as a matter of law.

Respectfully submitted, this the 6th day of September, 2017.

MANAGEMENT & TRAINING CORPORATION, DEFENDANT

BY:     /s/  *Steven J. Griffin*_____
             OF COUNSEL

ROY A. SMITH, JR. - BAR # 7599
rsmith@danielcoker.com
STEVEN J. GRIFFIN - BAR # 103218
sgriffin@danielcoker.com
DANIEL COKER HORTON AND BELL, P.A.
4400 OLD CANTON ROAD, SUITE 400
POST OFFICE BOX 1084
JACKSON, MISSISSIPPI 39215-1084
TELEPHONE: (601) 969-7607
FACSIMILE: (601) 969-1116

## **CERTIFICATE OF SERVICE**

I hereby certify that on September 6, 2017, I electronically filed the foregoing with the Clerk

of the Court using the ECF system, which provided notice to the following counsel of record:

Aafram Y. Sellers
aafram@sellerslawfirm.net

Kelly M. Williams
kwilliams@sellerslawfirm.net

*Attorneys for Plaintiff*

*/s/ Steven J. Griffin*